IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION



EOD
05/25/2017

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **RODGER M. WILLIAMS** | § | Case No. 15-41814 |
| xxx-xx-4654 | § | |
| **and SARAH LYNN HOFFMAN** | § | |
| xxx-xx-4011 | § | |
| | § | |
| Debtors | § | Chapter 7 |
| | | |
| SARAH LYNN HOFFMAN | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 16-4006 |
| | § | |
| TEXAS GUARANTEED STUDENT | § | |
| LOAN CORPORATION | § | |
| | § | |
| Defendant | § | |

# FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

Upon trial of the complaint filed by the Plaintiff, Sarah Lynn Hoffman ("Plaintiff") in the above-referenced adversary proceeding, seeking a determination that her student loan indebtedness currently owed to the Defendant, the Texas Guaranteed Student Loan Corporation ("TGSLC") should be discharged because it imposes an undue hardship upon her and her dependents, the Court issues the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, as incorporated into adversary proceedings in bankruptcy cases by Fed. R. Bankr. P. 7052.

---

[1] These findings of fact and conclusions of law are not designated for publication and shall not considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other applicable evidentiary doctrines.

# FINDINGS OF FACT

1. The Plaintiff, Sarah Lynn Hoffman, is a 46-year-old married woman currently residing with her husband, Rodger M. Williams, in a two-person household in Denison, Texas.

2. In the late 1980s and early to mid-1990s, the Plaintiff utilized various student loans in order to attend various educational institutions including Tyler Junior College, Texas A&M University, College of the Desert in Palm Desert, CA, and the University of Texas at Tyler.

3. Through the assistance of the student loans, the Plaintiff obtained an Associates' degree from College of the Desert in California in 1994 and a Bachelor of Science degree from UT-Tyler in 1996.

4. The Plaintiff acknowledges that she obtained the student loans, which have since been consolidated into the single promissory note, for an educational benefit.[2]

5. The various student loans were eventually consolidated into one note.

6. The Defendant, the TGSLC, is the guarantor and present owner and holder of the consolidation promissory note executed by the Plaintiff in May 2003 in the initial principal amount of $50,843.92.[3]

7. The Plaintiff acknowledges that the indebtedness owed to the TGSLC is an educational loan "made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit . . ." which meets the definition of 11 U.S.C. §523(a)(8)(A).[4]

8. Since the inception of the loans, the Plaintiff obtained unspecified deferments and forbearances at unspecified times for the subject loan.

9. The Plaintiff does not qualify for any payment reduction under an income-based repayment plan due to the size of her income.

---

[2] ¶ 3(b) of the Agreed Issues of Fact set forth in the approved Joint Pre-Trial Order entered in this adversary proceeding on April 13, 2017.

[3] Ex. K.

[4] ¶ 3(a) of the Agreed Issues of Fact.

10. As of February 16, 2016, the Plaintiff owed the sum of $86,372.99 on her student loan obligation. Interest continues to accrue at the approximate rate of $15.43 per day.

11. If reinstituted, the Plaintiff's monthly student loan payment should total approximately $592 per month for a period of 360 months.[5]

12. When the Plaintiff filed for Chapter 7 bankruptcy relief in October 2015, she and her husband, Rodger Williams, owned no real property, had nominal personal property, including 2007 and 2008-model automobiles, and she had a retirement account in the amount of $4,500.00.[6]

13. All unsecured debt owed by the Plaintiff, other than the IRS tax obligations and the present student loan indebtedness, was discharged upon the entry of a discharge order in the underlying bankruptcy case on January 11, 2016.

14. The allegedly nondischargeable tax obligation arose from unpaid tax liabilities incurred for a political consulting business owned by the Plaintiff and her spouse for which federal tax returns were not timely filed from 2005 through 2009.

15. The Plaintiff and her spouse scheduled federal income tax debt in the aggregate amount of $205,272.29 in their bankruptcy schedules.[7]

16. The Plaintiff testified that only a small portion of the IRS debt owed by her and her husband was discharged as a result of their bankruptcy filing, but no proofs of claim were filed in their no-asset Chapter 7 case, and the Plaintiff offered no corroborating evidence to substantiate the degree to which the 2005-09 tax liabilities survived the discharge.

17. The Plaintiff is currently employed by Protrials Research, Inc. of San Jose, California for which she provides study management of clinical research operations and clinical research studies regarding products in the pharmaceutical, biotech and device industries.

---

[5] Ex. L.

[6] Ex. 3 at P-059-62.

[7] *Id.* at P-072-73.

18. The Plaintiff has no disabilities, medical conditions, or other barriers that would preclude her from gainful employment.

19. The Plaintiff's gross annual income for the year ending 2015 was $102,384.00.[8]

20. The Plaintiff's gross annual income for the year ending 2016 was $111,792.00.[9]

21. The Plaintiff is on pace in 2017 to equal her 2016 earnings.[10]

22. The Plaintiff's monthly take-home pay is approximately $6,484.00.

23. The following constitutes the estimated monthly expenses of the Plaintiff and her spouse, with no other dependents, as originally expressed in their bankruptcy schedules and as modified by the Plaintiff's testimony at trial:

| Expense | Amount |
| --- | --- |
| Rent | $ 975[11] |
| Home Maintenance | $ 100 |
| Electricity | $ 350 |
| Water | $ 75 |
| Phone-Cable-Internet | $ 485 |
| Food | $ 1400 |
| Clothing | $ 100 |
| Personal Care | $ 50 |
| Medical/Dental | $ 1500 |
| Transportation | $ 250 |
| Entertainment | $ 100 |
| Charitable Contrib. | $ 25 |
| Auto Insurance | $ 250[12] |

---

[8] Ex. 2 at P-030.

[9] *Id.* at P-054.

[10] *Id.* at P-055-56; P-050.

[11] This is an increase from $850/month which was being incurred in October 2015. The Plaintiff further testified that this amount would actually increase to $1100/month for April-Sept. 2017 as they pay the required deposit on their new residence rental over a six-month period.

[12] This is an increase from $170/month that was being incurred in October 2015.

|  |  |
|---|---|
| Renter's Insurance | $   40 |
| Auto Payment | $ 520 |
| His Student Loan | $ 400[13] |
| Her Student Loan | $ 400 |
| Payment for Others' Support | $ 100[14] |
| Pet Expenses | $  100[15] |
|  | $7,220 |

24. The Plaintiff contends that the significant amounts in certain spending categories are dictated by her husband's medical needs, which precludes him from gainful employment and from providing any contribution to the support of the household.

25. The Plaintiff's spouse, Mr. Williams, is 60 years of age and, based solely upon the testimony of the Plaintiff, suffers from a number of medical problems, including congestive heart failure, type-2 diabetes, eroding comprehension skills, and a growing problem with dementia.

26. According to the Plaintiff, Mr. Williams has not worked in eight or nine years and applied a few years ago for disability (presumably, Social Security) but was denied.

27. Her husband's medical condition also requires the Plaintiff to work from her home in order to provide a degree of supervision for him, although the Plaintiff admits that overnight trips for her are not precluded by his illness.

28. The Plaintiff expects that her 60-year-old husband's medical condition will never improve.

29. The Plaintiff offered no corroborating testimony from any doctor or any other medical source regarding her husband's medical condition or his prognosis.

30. Her husband's medical expenses are primarily covered by health insurance procured through the Plaintiff's employer.

---

[13] The Plaintiff testified that they have applied for a "dismissal" of her husband's student loan obligation because his deteriorated medical condition precludes any type of employment. No timetable for decision was outlined in her testimony.

[14] The Plaintiff testified that this was a generic category for financial support provided for her seven children and nine grandchildren.

[15] This is a decrease from the $250/month listed in Plaintiff's Schedule J.

31. Yet the Plaintiff claims that an expenditure of an additional $1,600 per month in medical expenses is required for her husband because, in addition to meeting deductibles and co-payments, they utilize medical professionals that are not "in-network" with their insurance carrier and that such substantial "out-of-network" charges are incurred even for emergency care.

32. The Plaintiff offered no corroborating evidence to support her testimony regarding the legitimacy or the frequency of the proffered expenses, including the significant expenditures for food, as well as the medical expenses.

33. Even if the proposed expenditures are accurate, the expenses incurred by the Plaintiff's household are still extravagant in certain categories and much of the Plaintiff's routine spending reflects an elective, discretionary diversion of disposable income.

34. The stated income and expenses of the Plaintiff's household reflect a standard of living that cannot be legitimately described as "minimal."

35. The Plaintiff has made little effort to control her expenditures or to impose reasonable household budgetary restrictions.

36. In fact, the evidence demonstrates the lack of reasonable financial controls by the Plaintiff in that her household has been forced to pay more than $9,000.00 in overdraft and return item fees to her bank in the past 2½ years alone.[16]

37. While certain categories of expense may certainly be characterized as beyond the Plaintiff's control, the Plaintiff failed to present sufficient evidence to demonstrate that she has attempted all feasible avenues at her disposal to manage her budget in an effort to address her student loan obligations.

38. The Plaintiff failed to demonstrate by a preponderance of the evidence that she cannot maintain a minimal standard of living for herself and her dependents if she is forced to repay her student loan.

39. The Plaintiff failed to demonstrate by a preponderance of the evidence that any inability to maintain a minimal standard of living even exists currently — and certainly not that any such inability would be likely to persist for a significant portion of the student loan repayment period.

---

[16] Ex. J.

40. The Plaintiff failed to present a clear demonstration of the payments which she has actually made on her student loan indebtedness over the past two decades.

41. The Plaintiff failed to demonstrate by a preponderance of the evidence that she has made a good faith effort to address her student loan indebtedness.

42. To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.

## CONCLUSIONS OF LAW

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1334 and 11 U.S.C. § 523. This Court has personal jurisdiction over the parties to this adversary proceeding.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (O).

3. §523(a)(8) of the Bankruptcy Code excepts from an individual's discharge "a loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit . . . unless excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents."

4. This exception to discharge "was enacted to prevent indebted college or graduate students from filing for bankruptcy immediately upon graduation, thereby absolving themselves of the obligation to repay their student loans." *Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 436-37 (6th Cir. 1998). It also protects the continued financial viability of educational loan programs.

5. As the Second Circuit once observed,

   ...because student loans are generally unsecured and recent graduates often have few or no assets, these debtors have an incentive to try to discharge their educational loans in bankruptcy. If successful, they can then enjoy the higher earning power the loans have made possible without the financial burden that repayment entails. Congress enacted § 523(a)(8) because there was evidence of an increasing abuse of the bankruptcy process that threatened the viability of educational loan programs and harm to future

       students as well as taxpayers. Congress recognized that this is an instance where a creditor's interest in receiving full payment of the debt outweighs the debtor's interest in a fresh start.

*Cazenovia College v. Renshaw (In re Renshaw)*, 222 F.3d 82, 86-87 (2d Cir. 2000) (citations omitted).

6. Surprisingly, there is no precise definition of the term "undue hardship." It is not defined in the Bankruptcy Code nor has any particular judicial definition been endorsed by any decision of the United States Supreme Court. *Kettler v. Great Lakes Higher Educ. Serv. Corp. (In re Kettler)*, 256 B.R. 719, 722 (Bankr. S.D. Tex. 2000).

7. However, as courts have attempted to balance a debtor's need for a fresh start with the recognized need to protect student loan programs and their participants, a growing consensus has emerged regarding the evidentiary foundation necessary to establish an undue hardship.

8. Most of the federal circuits have endorsed a three-prong test articulated by the Second Circuit Court of Appeals in *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2d Cir. 1987) under which a debtor is required to show:

    (1) that, if forced to repay the student loan, the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents;

    (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loan; and

    (3) that the debtor has made good faith efforts to repay the loan.

*Id.* at 396.

9. The *Brunner* test was expressly adopted by the Fifth Circuit in 2003. *U.S. Dept. of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89 (5th Cir. 2003).[17]

---

[17] Having originated in the Second Circuit, the *Brunner* test has also now been adopted in the Third, Fourth, Sixth, Seventh, Ninth and Eleventh Circuits. Third: *Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 306 (3d Cir. 1995); Fourth: *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393 (4th Cir. 2005); Sixth: *Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 295 (6th Cir. 2005); Seventh: *In re Roberson*, 999 F.2d 1132, 1135 (7th Cir.

10. The burden of proof is on the Debtor to demonstrate that all three prongs of the *Brunner* test have been met. The failure of the debtor to prove any one of the three *Brunner* factors precludes a discharge of the student loan indebtedness. *Russ v. Tex. Guaranteed Student Loan Corp. (In re Russ)*, 365 B.R. 640, 644 (Bankr. N.D. Tex. 2007) (J. Houser); *Teague v. Tex. Guaranteed Student Loan Corp. (In re Teague)*, 2017 WL 187557, at *2 (Bankr. N.D. Tex. Jan. 17, 2017) (J. Hale).

11. Under the first *Brunner* element, the Debtor is required to show that she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if she is forced to repay the student loan.

12. This analysis is actually a two-step process encompassing: (1) the evaluation of the debtor's present standard of living based upon her lifestyle attributes which appear from the record and (2) whether the forced repayment of the student loan obligation will preclude the debtor from maintaining a minimal standard of living. *Naranjo v. Educ. Credit Mgmt. Corp. (In re Naranjo)*, 261 B.R. 248, 254-55 (Bankr. E.D. Cal. 2001).

13. The test requires "more than a showing of tight finances, and is not met 'merely because repayment of the borrowed funds would require some major personal and financial sacrifices.'" *Elmore v. Mass. Higher Educ. Assistance Corp. (In re Elmore)*, 230 B.R. 22, 26 (Bankr. D. Conn. 1999), citing *Penn. Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 306 (3d Cir. 1995), *cert. denied*, 518 U.S. 109, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996).

14. "The minimal standard of living element . . . requires the debtor to demonstrate that he or she is attempting to minimize living expenses and maximize financial resources." *Justice v. Educ. Credit Mgmt. Corp. (In re Justice)*, 2016 WL 6956642, at *3 (Bankr. N.D. Miss. Nov. 28, 2016).

15. "A minimal standard of living is living within the strictures of a frugal budget in

---

1993); Ninth: *United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108, 1111-12 (9th Cir. 1998); Tenth: *Educ. Credit Mgmt. Corp. v. Polleys (In re Polleys)*, 356 F.3d 1302 (10th Cir. 2004); and Eleventh: *Hemar Ins. Corp. v. Cox (In re Cox)*, 338 F.3d 1238, 1241-42 (11th Cir. 2003). The Eighth Circuit has elected to embrace a "totality of the circumstances" test in lieu of the *Brunner* factors. *Educ. Credit Mgmt. Corp. v. Jesperson (In re Jesperson)*, 571 F.3d 775, 779 (8th Cir. 2009). The First Circuit saw "no need . . . to pronounce our views of a preferred method of identifying a case of undue hardship," *Nash v. Conn. Student Loan Found. (In re Nash)*, 446 F.3d 188, 190 (1st Cir. 2006), although its bankruptcy appellate panel has criticized *Brunner*. *Bronsdon v. Educ. Credit Mgmt. Corp. (In re Bronsdon)*, 435 B.R. 791, 798-800 (B.A.P. 1st Cir. 2010).

the foreseeable future. . . ." *Murray v. Educ. Credit Mgmt. Corp. (In re Murray)*, 563 B.R. 52, 58 (Bankr. D. Kan. 2016).

16. It does not, however, require a debtor to demonstrate that repayment of the loan would cause her and her family to live at or below poverty level. *Id*.; *O'Donohoe v. Panhandle–Plains Higher Educ. Auth. (In re O'Donohoe)*, 2013 WL 2905275, at *4 (Bankr. S.D. Tex. June 13, 2013).

17. The second *Brunner* factor requires the Plaintiff to demonstrate that additional circumstances exist which indicate that her inability to maintain a "minimal" standard of living, as established under the first prong, is likely to persist for a significant portion of the repayment period of the student loan.

18. This second prong considers the likelihood that the debtor's financial situation will improve sufficiently in the future to permit her to resume the payment of her educational loans, *United States Dept. of Educ. v. Wallace (In re Wallace)*, 259 B.R. 170, 181 (C.D. Cal. 2000).

19. The second prong is "intended to effect the clear congressional intent exhibited in section 523(a)(8) to make the discharge of student loans more difficult than that of other nonexcepted debt." *United Student Aid Funds, Inc. v. Nascimento (In re Nascimento)*, 241 B.R. 440, 445 (B.A.P. 9th Cir. 1999).

20. Essentially it forces a debtor to establish the existence of circumstances which now negatively impact her future earning potential but "which were either not present when the debtor applied for the loans or have since been exacerbated." *Gerhardt*, 348 F.3d at 92.

21. "Thus, proving that the debtor is currently in financial straits is not enough. Instead, the debtor must prove a total incapacity . . . in the future to pay his debts for reasons not within his control." *Id*.

22. "The second prong of *Brunner* is meant to be a demanding requirement." *Educ. Credit Mgmt. Corp. v. Blake (In re Blake)*, 377 B.R. 502, 507 (E.D. Tex. 2007)

23. The third *Brunner* factor is whether the debtor has made a good faith effort to repay her student loan.

24. This consideration recognizes that undue hardship "encompasses a notion that the debtor may not wilfully or negligently cause his own default, but rather his condition must result from 'factors beyond his reasonable control.'" *Stein v. Bank of New England (In re Stein)*, 218 B.R. 281, 288 (Bankr. D.Conn.1998), citing *In*

*re Roberson*, 999 F.2d 1132, 1136 (7th Cir.1993).

25. "Specifically, courts look at: (1) the attempts by the debtor to maximize income through employment while minimizing expenses; and (2) the number of payments the debtor has made on the loan combined with any attempts by the debtor to negotiate forbearance, deferral, or an income-contingent repayment program." *Gnahoua v. U. S. Dept. of Educ. (In re Gnahoua)*, 2016 WL 1238831, at *2 (Bankr. N.D. Tex. Mar. 29, 2016).

26. It is an important consideration that a debtor demonstrate that she has attempted all feasible avenues at her disposal to address her student loan obligations. Such efforts to utilize alternative means to address one's student loan obligations do, however, provide a useful and important indicator of good faith. *Pratt v. Educ. Credit Mgmt. Corp. (In re Pratt)*, 375 B.R. 753, 763 (Bankr. S.D. Tex. 2007).

27. Because the Plaintiff, Sarah Lynn Hoffman, has failed to establish any of the required evidentiary foundations necessary to establish undue hardship under § 523(a)(8) of the Bankruptcy Code under the three-prong test first articulated in *Brunner* and later adopted by the Fifth Circuit in *Gerhardt*, the Court concludes that the relief sought by the Plaintiff's complaint must be denied.

28. To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

29. An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 05/25/2017

*/s/ Bill Parker*

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE